DECEMBER TERM, 1840.

## J. NEIBERT'S ADMINISTRATORS *v.* S. B. WITHERS.

Where a judgment has been obtained against the representatives of a deceased person, and the estate of the deceased has been represented insolvent to the Probate Court, it is irregular under the statute (How & H. 410), to sue out an execution upon such judgment against the estate, and a court of chancery will enjoin it.

Where the administrators have represented their intestate's estate insolvent, and have filed a bill to enjoin an execution, upon a judgment at law, obtained since the representation, it is no answer to the bill, that the representation of insolvency was procured by fraud, or that the administrators had improperly managed and used the estate.

It is not necessary, before an estate of a deceased person can be declared insolvent, that the real and personal estate of the deceased should be sold and reduced to money ; it is sufficient, if the administrator or executor, from a comparison of the probable value of the real and personal estate, with the debts, shall deem the estate insolvent, and so represent it.

THE bill, in this case, states, that complainants are administrators of J. Neibert, deceased, and at the last February term of the Probate Court of Adams county, they represented said estate insolvent, and commissioners to audit claims were appointed by said Court. A copy of the proceedings in said Court are exhibited with the bill. It states, that no order of the sale of the real estate was then made, and none can now be made, owing to the absence of the Judge of said Court ; but complainants would have such order made so soon as it could be legally done ; at least, as soon as the cotton crop then growing could be gathered — said estate consisting in part of a valuable cotton plantation, in Washington county.

It declares their belief, that the whole of said estate, both real and personal, will be insufficient to pay off the claims against said estate : that the defendant obtained a judgment in Adams Circuit Court against complainants, as administrators of said J. Neibert, deceased, before said estate was represented insolvent, for $1539·74 and costs, on a common debt of said estate, not privileged : that a *fi. fa.* hath been issued thereon to Washington county, and the bill exhibited a transcript of the judgment and the proceedings : that defendant was seeking to enforce said execution, and that slaves,

now on said estate engaged in picking cotton, would be taken and sold, unless restrained, to the injury of the estate, and other creditors, and prays perpetual injunction, and general relief.

The answer of Withers states, that he does not admit that said complainants were obliged to represent the estate of Neibert insolvent, as the bill alleges : does not admit that any such representation of insolvency was made, or that such report has been allowed or commissioners appointed, as Exhibit A of the bill is not filed. [This exhibit was afterwards filed, before the hearing of the motion.] That if such proceedings took place, it was in fraud by the complainants, and negligence by the Court : avers that complainants have received three years' proceeds of said estate, say $80,000, which they have appropriated, in part, to the payment of such debts as they pleased, without regard to legality. And this, notwithstanding numerous claims have been presented and suits brought against them which they have utterly failed to pay, or turn any part of the estate into money to pay : that they have always, and do still, use the whole estate, worth $250,000, as their own property in all things, notwithstanding such pretended report of insolvency.

The answer further states, that complainants have never applied to the Probate Court for leave to sell any part of said estate to pay debts, &c.: charges, that such report of insolvency is fraudulent and void, and avers, positively, that said estate is not insolvent : that the securities in the administration-bond of complainants have become utterly insolvent since the execution thereof ; that Neibert, in his lifetime, was indebted on bills and notes to the extent of $50,000, on which there were numerous accommodation indorsers, who are now sued, and will be compelled to pay said notes, if said report of insolvency is held good. Expressly charges, that said pretended report of insolvency was made to hinder and delay creditors, and not to administer lawfully said estate.

It admits, the probate Judge was absent a part of last summer, but denies that complainants should be permitted to receive to their own use another crop of cotton : admits the recovery of judgment by the respondent, the issuance of execution, and directions to the sheriff to levy the same : denies, that the bill shows a legal report or declaration of insolvency, and asserts, that the bill and this answer

show a case over which the Probate Court had no jurisdiction, and relies on this by way of demurrer.

The Exhibit A, of the bill, contained a certified copy of the proceedings in the Probate Court of Adams county, and showed that the estate of Neibert had been represented insolvent to that Court, and that commissioners of insolvency had been appointed, before the real estate had been ordered to be sold.

*Montgomery*, and *Boyd*, for motion.

The bill itself does not show a case within the jurisdiction of the Orphans' Court. That Court has no general power to allow or declare an insolvency against decedents' estates : the power is only to declare particular estates, or estates in a particular condition, to be insolvent ; and their records must show this condition, or there is a want of jurisdiction apparent. So, the same tribunal has not authority to grant letters of administration generally, but only upon the estates of decedents, and unless their records show the fact which places the estate within their control, they have no such control. It is true, it may afterwards be shown that their judgment in the particular case was wrong, but if the record does not show this, and has a case upon its face, no matter how false, within the jurisdiction of the Court, then there can be no question made against the record.

The distinctions are clearly taken and strongly illustrated by Judge Marshall, in 8 Cranch, 21 ; also, 6 Wheat. 128 ; 9 Pick. 259 ; 2 Peters, 164 ; 1 Hayw. 414 ; 1 Cooke, 194, 268 ; 1 Willes, 199 ; 1 Saund. 313 ; 1 Strange, 703 ; 2 ib. 102 ; ib. 996 ; 1 Burr. 620 ; 2 Willes, 382 ; 1 How. 173, 174.

Had the Orphans' Court, then, jurisdiction of the subject-matter of the insolvency of the estate of Neibert, according to the allegations and exhibits of the bill ? They had not, unless the record shows a condition of the estate which is the foundation of that jurisdiction, any more than they would have a right to grant letters of administration without proof apparent of the decease.

The record, then, does not show such a case. This will be manifest on looking to the Orphans' Court act.

By the 98th section it is provided, that when the administrator

shall discover or believe that the personal estate is not sufficient to pay the debts, &c., a citation shall issue for all persons to show cause why all or part of the real estate should not be sold.

By the 99th section, if the Court shall find that the personal estate is not sufficient, then said Court shall order the whole or part of the land sold.

It may be here remarked, that the whole scope of the act, so far as it relates to the payment of debts, contemplates the exhaustion of the personalty first, and before the real estate is touched. And on the above examination by the Court, if the personal estate appeared sufficient, the order of sale would only go to the personal estate. Indeed, it could never be ascertained, without turning it into money, whether it would or would not cover all claims.

But, further, the 103d section of the act would serve to remove all doubt. The order of its different sentences is not very exact, but the substance is easily deduced.

It shows clearly that the intention was, that the whole estate should be turned to money, before the report of insolvency could be made; or, in other words, this was the legal ascertainment of the fact of insolvency, when the debts outbalanced the proceeds of the sale of real and personal property of the decedent. It was this deficit alone which gave a subject-matter for the action of the Court. Thus, it begins by saying, that when " the estate, real and personal, shall be insolvent," &c. " the said estate, real and personal, shall be distributed to and among all the creditors," &c. &c. This clearly means, when the proceeds of the sales before directed are insufficient to pay the debts; for it will be observed, that the word *distributed*, in reference to creditors, is applied to the " estate, real and personal," which can only mean the proceeds of the estate, real and personal. This is abundantly manifest, from a sentence in the same section, about midway of it, which requires " the Court to order the residue and remainder of the estate, both real and personal (the real being sold, according to law), to be paid and distributed to and among the creditors," &c.

Again. By the same section, before the estate can be in a condition for the action of the Probate Court, an account, in reference to the real estate, like that provided for in the 98th section, in ref-

erence to the personal estate, is to be exhibited to the Court. Now such account can never be made out, till after a sale of the lands. The reason is stronger in regard to land, than personal estate, because the appraisement would give the Court some rule as to the value of the last, but none as to the first.

This account being submitted to the Probate Court, if it appear, on striking a balance (after the lands have been ordered to sale, as aforesaid), on all the information furnished by the proceedings under the 98th and 99th sections, that the estate is insolvent, then commissioners are to be appointed, and the legal insolvency is fixed. And till these facts concur, there is no subject-matter for the action of the Court; there is no case of insolvency before them.

After the appointment of commissioners, there can be no further sales of property, and it only remains to be distributed; and whereever, in this section, the distribution is hinted at, it is also reiterated that the real estate must first be sold.

From this hasty and imperfect view, it would follow, as a necessary consequence, that if a judgment-creditor can find property, real or personal, on which to levy an execution, after any supposed representation of insolvency, that such insolvency did not exist, and *that* any judgment or decree, declaring insolvency under such circumstances, must be fraudulent and void. (Vide last part 103d section Probate Act.

If this be not the case, the creditor is without remedy. He cannot coerce a sale, nor can the Court make any further orders of sale. His execution is tied up, and cannot be levied. He can get no nearer to a recovery of his debt, by proving his claim before commissioners, for there will be no money on hand to pay him, and the Court can decree no distribution or payment, till the real and personal estate is reduced to money, which will never be, unless done before the declaration of insolvency.

The case before the Court is a full illustration of these views. Here is an estate yielding in three years $80,000; not an article of this estate, real or personal, has been sold and applied to the payment of debts. The administrators have received, used, and enjoyed the income as they pleased. The whole property remains in their hands, in defiance of law. Execution creditors, who are ready

to levy their process, are enjoined, and the accommodation indorsers are sued to the amount of $50,000, for Neibert's debts, which they will be compelled to pay, and then seek their redress by the vain mockery of proving their claims before commissioners, while the estate remains in kind, and not capable of distribution to them, and the administrators and securities utterly insolvent, even if a recovery could be had against them.

Independent of this, it is averred in the answer, that the estate is not insolvent, that it never has been so represented, that any pretended representation was made in fraud, and with the express view of hindering and delaying creditors.   Under this aspect of the case, where is the equity on which the injunction can rest?   None is perceived, none can exist.

I leave the case on these grounds, although, if not so well fortified as I believe my positions to be, I would question, with much confidence, the position, that a declaration of insolvency, after judgment recovered, will stay the execution or levy of process.   There is no such express provision, and the case is not one permitting any equitable constructions or interpretations.


*Quitman,* and *M'Murran,* for complainants.

The answer sets up, in objection to the injunction,

1. Delay, in the representation of insolvency.

2. Receipt by the administrators of a large amount of assets, and appropriating them to such debts as they pleased, without regard to law.

3. Using the estate as their own.

4. That the report of insolvency is fraudulent, and that the estate is not insolvent.

5. That the sureties in administrator's bond are insolvent.

6. That accommodation indorsers of Neibert may be injured by being sued, and compelled to pay debts.

7. That said pretended report was made to hinder and delay creditors.

8. That the bill does not show a legal report or declaration of insolvency.

The 2d, 3d, 4th, 5th, 6th, and 7th objections, are distinct mat-

ters of avoidance, unsupported by proof, and the facts therein stated cannot be admitted on this motion. The 1st and 8th refer to the bill, and, so far as they can be sustained by its allegations, are admitted.

The record exhibited Ex. A, contains sufficient to show that the estate was represented insolvent, and that the Probate Court proceeded to consider it such by the appointment of commissioners to receive and audit claims. If the proceeding of that Court was erroneous, the defendant may be heard on application to reverse it ; but while it remains unreversed, this Court will not inquire into it collaterally.

The question here is, Has this estate been rendered insolvent ? The bill both alleges that it has been so represented, and that it is so. The exhibit shows such representation and finding. The statute, How. & Hutch. L. p. 410, declares, " nor shall any action or suit be commenced or sustained against him (administrator) after the estate, &c. be represented insolvent."

It is not necessary that the estate should be proven to be insolvent : it is sufficient that it should be so represented, and that representation need only be on the belief of the administrator.

The words, *shall not be sustained*, imply a prohibition to take any steps after judgment, as well as before.

The object of the laws upon this subject is clear and explicit. So soon as there be made a representation of insufficiency, even before the fact be found, all proceedings against the estate must at once cease : the estate must be liquidated, and creditors paid *pro rata*. The Probate Court is open to them ; they will there be heard, and there alone, to prefer and urge their claims.

Equity will aid an equal distribution of the assets, and not permit one creditor to be preferred. The time for representing an estate insolvent, is wisely not limited ; it may be done at any time. The administrator may not know the liabilities of the estate ; obligations on warranties, indorsements, and other contingent engagements, may unexpectedly change the condition of an estate years after administration has commenced.

Suppose, even, that administrators waste an estate, would their misconduct be visited on creditors ? Would their waste justify one creditor to sweep away the estate that remained, to the prejudice of others ?

If the matters in avoidance in defendant's answer were admissible as facts in this motion, they amount only to complaints of being delayed in his selfish attempt to appropriate more than his share of the proceeds of this estate. But if it has been so badly managed and wasted — and, from his positive and perilous oath about the condition of the estate, it would seem he was very well acquainted with the proceedings thereon — why did he not cite the administrators, to account in the Probate Court? If their security was insufficient, why not remove them, or force better ? The Probate Court is open ; a creditor will there be heard : it is the proper and the only forum for adjusting these matters. The Chancellor will readily perceive the utter confusion in which estates represented insolvent would be, if creditors could thus proceed.

We conclude, that the case is sufficiently made out to continue this injunction. If the party, on final hearing, should prove the solvency of the estate, the plaintiffs will most happily pay his claim, and, by their counsel, sincerely hope that such may be the fortunate result of the sales of the estate.

Administrators are considered by this Court trustees, and as such will be heard, though possibly a *supersedeas* might lie at law. The answer, however, does not permit a defence on this point, and we therefore forbear to discuss it. 2 Paige, 509 ; *Grandin* v. *Le Roy*, 4 Cow. 717.

CHANCELLOR. The only allegation of the bill which I deem it necessary to notice, in this motion, is the one, that the estate of Neibert has been represented by the administrators, to the Probate Court, to be insolvent. This is averred by the bill, is proved by the exhibit, and is not denied by the answer. I do not deem it essential to the inquiry upon this motion, to investigate the history of the proceedings of the administrators, beyond the point of the representation of the insolvency of the estate. The record presented with the bill is defective; the order, appointing the commissioners of insolvency, is erroneous, if not absolutely void; yet, defective as the record is, it is sufficient to show that there has been a representation of insolvency, and to that extent the proceedings in the Probate Court seem to have been regular enough. Does such

a representation inhibit the enforcement of a judgment against the estate, rendered prior to that representation, is the point presented for my decision. This question involves a construction of several sections of the probate law, regulating the administration of insolvent estates.

It is provided by the statute (How. and Hutch. 409, sec. 80), that when the estate,, both real and personal, shall be insolvent, or insufficient to pay all just debts which the deceased owed, the executor or administrator is required to exhibit, before any debts are paid to any creditor, except privileged debts, an account and statement of the situation of the estate, including lands, tenements, &c. of the testator or intestate; and if, thereupon, it appears to the Orphans' Court, that the estate is insolvent, then the Court, after ordering sale of the lands, tenements, &c., is required to appoint commissioners, to receive and audit claims against the deceased; and, upon report by them, the Court must order the executor or administrator to pay the proceeds, *pro rata*, to the creditors who are reported such by the commissioners. The same section of the statute provides, that no suit or action shall be commenced or sustained, against the executor or administrator after the estate of the testator or intestate is represented insolvent; by the 98th section of the same act (How. and Hutch. 415) it is further provided, that a suit already brought, or pending, may be prosecuted to judgment, notwithstanding the representation of insolvency, but that no execution shall issue, and that the claim must be filed with the commissioners.

The bill expressly charges, and shows by its exhibits, that the representation of the insolvency of the estate has been formally made to the proper tribunal, and prays that an execution, upon a judgment against the administrators, which the defendant is pressing against the estate, may be enjoined. The matters set up by the defendant, in avoidance of this charge, and in answer to it, call upon me to give a construction to the various acts upon the subject.

1. It is, in the first place, strenuously urged by the defendant, that no *legal* representation of insolvency has been made in this case; and it is insisted, that the record discloses a want of power in the Probate Court, under the statute, and in the present condition of the

estate, to entertain such a representation ; because, it is said, that such a representation can only be made when there has been a sale of the estate, both real and personal, of the deceased, and it has been reduced to money, and the executor or administrator, from a comparison of the proceeds of the sales with the debts of the testator or intestate, can safely represent, whether the estate is insolvent or not. It is attempted to sustain this view of the statute, by a reference to its language, which declares, that when the "estate, real and personal, shall be insolvent," &c. ; and which also orders, that "the residue of the estate, real and personal, after paying funeral expenses," &c. "shall be distributed," &c. ; the inference being thence drawn, that, inasmuch as it was clearly the intention and contemplation of the act, that the entire estate, both real and personal, should be sold and reduced to money, before the *pro rata* distribution required could take place, so also it was equally its intention and requisition, that it should be so reduced, before the estate could be known, and so represented, to be insolvent. The position is not a tenable one. It must be at once apparent, upon taking the whole statute together, that the representation of insolvency, upon which all proceedings against the estate were to cease, must, or at least, may take place before a sale. The statute is express, that if it appear to the Orphans' Court that the estate is insolvent, it shall proceed, after ordering a sale of the lands, &c., to appoint commissioners to effect distribution. It is clear, then, that the insolvency of the real and personal estate, spoken of in the first part of the section, is not an insolvency, ascertained beyond question, by a direct comparison of the cash proceeds of the real and personal estate, reduced to money; because, when this insolvency has been made to appear to the Orphans' Court, they are directed to order a sale of the realty, which, upon the construction contended for, must already have been effected, and the proceeds reduced into the possession of the executor or administrator. Such a construction as that contended for, is not only repugnant to the tenor and words of the statute, but would destroy and render of no effect all its provisions. Long before the estate, under the slow process of administrator's and executor's sales, could be reduced to money, judgment and executions thereon against the administrator or executor, which there

would have been no power to stay or resist, would have swept away the personal estate, and perhaps have rendered an estate wholly insolvent, that might, under the more guarded and restricted mode, provided by a proper construction of the act, have yielded a large dividend. I cannot sanction a construction so subversive of the very object of the law. The power of the Probate Court, in regard to all matters regulating insolvent estates, is necessarily one involving great discretion in the probate judge. If that discretion be exercised improvidently or injuriously, and it be made to appear so in the record, there is a tribunal with ample power to correct it. I cannot doubt, that where, from a fair estimate of the value of the entire estate of the deceased, the administrator or executor is satisfied that it is (both real and personal) "insufficient to pay all just debts which the deceased owed," that, acting under the solemn responsibilities of an oath, faithfully to discharge his duties to the estate, he is bound to represent the condition of the estate to the Probate Court, for its action. Upon that representation, the court must act, and if satisfied that the entire estate is insolvent, must proceed to order sales of the realty; but it is not necessary to wait for that order of the Court, before the representative of the deceased can check any attempts, on the part of any creditor, to force out of the estate an undue portion, to be applied to his debt. For the statute is equally explicit, that, upon the representation of insolvency, no action or suit shall be commenced or sustained against him. Such a representation, in full compliance with the words and spirit of the act, has been made in this case; is the defendant commencing or sustaining an action or suit against him ?

2. This brings me to the second position, that I shall notice, taken by the defendant. That is, that a judgment rendered before the representation of insolvency, is not within the words or purview of the act, and is therefore not embraced by it. I think this position equally untenable with the other. I can discover no reason, nor is any suggested, why there should be a distinction drawn between judgments before and after the representation. They are both equally destructive to the object of the law, viz. a general and equal distribution among all creditors of the deceased, in proportion to their respective claims, of all the property of the deceased ; and

this object is no less frustrated by a sale of a portion of the property under a prior, than it would be by a sale under a subsequent, judgment.    Independent, however, of these considerations, I think that the statute does in terms, as well as spirit, embrace judgments before the representation of insolvency.    Its language is:— " No action or suit shall be commenced or sustained against him after the estate of the testator or intestate be represented insolvent."    What is meant by, " shall be sustained?"    To what does it refer, if not to suits then pending, either in judgment, or not yet reduced to that condition ?    And surely it cannot be said, that it will not be sustaining an action or suit against the administrators in this case, if an execution upon a judgment is permitted to be levied upon the negroes, and they sold, to the utter destruction of the estate.    It is clear, then, to my mind, that this portion of the statute applies to and embraces a case like the one before me.

3.  It is charged in the answer, and relied upon in the argument, somewhat, that the representation of insolvency was false and fraudulent.    This may be so; and, if so, it would be very good ground for proceedings in the Probate Court, to have the representation examined and set aside.    But this Court is not authorized to inquire into the truth or falsity of the charge.    The whole subject is committed to the sole jurisdiction of the Probate Court, which is able to regulate and adjust it.    This Court cannot revise, in this mode, their proceedings.    Under this same head, may be considered the charge, indirectly relied upon in argument, but forming great ground of complaint in the answer, that the administrators are improperly managing the estate, and using its income and proceeds for their individual ends.    If this charge were true, the remedy is full and simple, in a different tribunal.    The same court that appointed the administrators, can, for any maladministration or misuse of the estate, remove them, and appoint others, and more trust-worthy persons.    This Court has no control over the matter.    The same remark applies to the allegation of the insolvency of the securities upon the administration-bond of the complainants.

Upon the whole, I am satisfied that the injunction should be retained.